Our second case this morning is Bauwens v. Revcon Technology Group. Mr. Shannon. Good morning. Let's just give it one minute here until we change council here. Okay, I think we're ready. You may proceed. Good morning. May it please the court and those present, my name is David Shannon and I represent the plaintiffs and the appellants in this action, the electrical insurance trustees. If you'll bear with me for a minute, I'm going to step off the reservation and read something that is not in our brief. I know the rules, but I think you're familiar with this and I think it will be helpful. This is the judicial writing manual from the federal judicial center. Now what we're dealing with here, entered below, is a memorandum opinion. And these are, quote, generally brief and informal. I get it. You've got very busy district court judges with crowded calendars. However, this is under, I'm reading from the same manual, this is under cryptic analysis. While brevity is desirable in an opinion, judges must elaborate their reasoning sufficiently so that the reader can follow it. And there's a corollary to that. I'm reading from the same manual. I'm not sure this is necessary because we have de novo review. Okay, I'm just saying, the main problem with this opinion, it is so opaque. We don't really even need to look at it because we have de novo review. Okay. So it's there for whatever power it has to persuade us, but just tell us why you win. Okay, so I'm trying to speculate on the court's reasoning here, that maybe it thought that our facts were in the wrong place. Okay, again, just tell us why you should win. Because, in fact, I'll take this up.  Because this step was accelerated, but then the acceleration was revoked at the request of the defendants. Is there a record citation to that revocation that you want to bring to our attention? I'm sorry, a record citation? A record citation to that revocation that you want to bring to our attention. It's not in a document. There's no writing requirement. Revocation does not have to be in writing. In fact, they made that argument below that there was some kind of, it's like a statute of frauds. It's not included in the statute of frauds. Revocation can be done by act. We had a revocation by an agreement here. It was over the telephone. If there is a revocation, then what about the second, third, and fourth complaints in which the indication was that the acceleration occurred? We stated in each complaint that the acceleration occurred and there was a default. We also stated that certain defaults were cured. Then we claimed that there was a revocation by agreement at the defendant's request and also a revocation by operation of law by the fact of a voluntary dismissal of the complaint. We've talked about the many cases that talk about that being an affirmative act. Right, and then the reinstatement of the installment plan for each employer, which implicitly unwinds the acceleration. Correct. I mean, necessarily. Correct. Even if it wasn't stated, necessarily, if the employers are given the benefit of being put back on the long-term payment plan. You're back in our good graces, as if there was no acceleration at all. Right. With respect to revocation by operation of law, I would only cite one additional case. This came down after our main brief was filed, ADHAMI. It's out of the District Court for the Eastern District of New York. That was decided on February 6, 2019. It's got a long survey of all the cases dealing with generally mortgage cases where there's an acceleration, and then there's a revocation of acceleration by the withdrawal of the action. That's unilateral action on the part of the lender. Here, it was a request by the debtor to please get us back on the track. I gather that this is fairly common in this industry, that when there are employer defaults, the trustee will work with the employers to get them back, as you say, on the good side of the ledger by allowing them to bring themselves current so that they can continue to pay on installment rather than pay all up front. Well, if I can address that this way, what should have happened here? When we sent out the initial notice under 4219C5, giving them 60 days, they should have picked up the telephone and said, fellas, we've got troubles. Instead, they waited for the 60 days to expire, and then they allowed us to declare a default, and then we file suit, and then they said, fellas, we've got problems here. I said, well, let's see your books and records. Why they didn't provide their books and records within that 60-day period, and maybe we would have said, hey, we're not going anywhere. You can't get blood out of it and turn up. We could have done that, but we didn't. Instead, they asked us to revoke the acceleration, and now they're coming back here, and that's why I'm calling it a brazen argument. I chose that word carefully. They asked us to do this, and now they're back here saying, you chumps, you can't do that under ERISA. We don't have any authority to cite, but you can't do that. You didn't sell your soul. You gave it away. Tell us why you don't have a 41A1B problem with the multiple dismissals. Judge, I'm not going to address that. I will rest on my brief with respect to 41A. I think that whole argument falls if there is no acceleration. That argument only works if there's an acceleration. There was an acceleration here, and once again, as God is on my witness, I will admit to this court, this debt was accelerated in 2008. I admit that. That is not the end of the story. The acceleration was revoked. A common agreement. This wasn't unilateral. Defendants requested it, and now they're saying, you can't do it under ERISA. We don't have any authority for that, but you can't do it. Under the Supreme Court's decision, we're in the same position as a commercial lender. They get to revoke acceleration. A lender on a mortgage can revoke acceleration. Why in the world would Congress give this powerful weapon to a trust fund and then tell them, however, well, they don't tell them that. But there's a problem with this. There's a drawback. Once you accelerate, you can't take it back. Don't you think they would have mentioned that if that was their intent? Congress knows how to make irrevocable elections. The tax code is full of them. They gave the trustees flexibility here, and then they say there's no flexibility once you make that decision, unlike commercial lenders and everybody else in the banking world? Why would they do that? With all of that, there's no statute of limitations. It just keeps rolling along, I guess. I don't even know what the company does. If you want to use the example of a ticking clock, yes, once we accelerated, we had a ticking clock. And then we revoked acceleration, and the clock didn't stop ticking. That got set back to zero. That got set back to zero, and it's not ticking. But then they kept on defaulting. So you had multiple clocks ticking. This one's ticking for that quarterly payment. And then we got another clock ticking, and then we got another clock ticking, and another clock ticking. We have multiple clocks ticking, but not the big one for the six-year limitation based on acceleration, because that clock got reset to zero by the agreement of the parties. And once the employers were back on the installment plan, then each default on the installment plan starts its own claim accrual. Yes, correct. Under Bay Area Laundry, that's the rule. Any other questions? I guess the company, the businesses are still going. They still have employees. I believe so. Yes, because, you know, sometimes withdrawal of liability means they've closed up, or they sold the business and the person takes over. Yeah, they have all kinds of other things. This is still a going business operation for both of them, I guess. I believe so. And that it just keeps starting over. They keep on defaulting. So, yeah, and renewing, because obviously nobody has the interest in everybody collapsing. So both sides want to keep this thing going. That's exactly right. That's why Congress gave the trust funds. In the process, it's not going to end until I don't know what. It probably seems that they're going to be operating at a deficit or catch up or something like that. Yes, Congress gave the trust funds a great deal of flexibility here. They can accelerate if they think it's a good decision. They can even do a partial acceleration. I've never seen one of those, but you can do a partial acceleration. That's a lot of flexibility. If there are no further questions, I'll. Thank you. Mr. Klapman. Good morning. I'm Dan Klapman. I obviously represent the appellees. I have plenty to talk about, but it's clear that you guys are very prepared. I'm going to try and address the two issues separately as briefly as I can, and I invite questions. We have two issues to discuss today. It's the time-barred issue, whether or not the claims asserted by the trustees in the 2018 complaint are barred by, first, the principle of res judicata pursuant to a determination on the merits under Rule 41A, and then the second issue is obviously the time-barred issue that you guys just discussed with counsel for the trustees. The answer to both questions is yes. This case is a lot simpler than it needs to be. What we have here are an undisputed fact. We just had, as God has counsel's witness and admission before you, that the entirety of the withdrawal liability was accelerated back in 2008. And when I say acceleration, that is an election under Section 1399C to call the entirety of the withdrawal liability due. But that was withdrawn at your request, and your clients were placed on the installment plan again at their request. You represent both employers, right? Correct. And each new default of the reinstated installment plan sets a new limitations clock and creates a new cause of action that's not the same as the one that was brought before, so we don't have a res judicata problem and we don't have a statute of limitations problem. Well, there would be the res judicata problem. We do have a res judicata problem because the application These are new defaults. These are suits for new defaults under the reinstated payment plan. That's not the same action as the suits for distinct defaults previously. I agree that And so we don't have a Rule 41 problem either because we don't have a two dismissal of the same action issue. Okay, I agree that the 2018 complaint is a complaint for an installment for damages in regards to unpaid installments, but the prior complaints are not. Each complaint in 2009, 2011, 2013, and 2015 do not just seek That's not significant here. What the trustees are seeking here is money that you defaulted on recently within the limitations period. I agree. But the complaints that were previously dismissed by notices of voluntary dismissal Those have no legal effect here. It's a different action. Except that they confirm, frankly, that the employers were put back on the payment plan after they cured, so the acceleration option that was invoked was withdrawn at the defendant employer's request. And that is apparently borne out by the correspondence exchange that was submitted on the motion to dismiss. Well, that doesn't address one issue. Again, I agree with you that the 2018 complaint does seek only missed installment payments. But if you compare the 2018 And there's not much left of this withdrawal liability. Is there? I mean, it's substantially paid down by this point. It is substantially paid down, but we're still talking about significant amounts of withdrawal liability. What's the total for each? I don't have the numbers in front of me, Your Honor. It's about $27,000 for Revcon and $5,800 for S&P. I think it's a little more than that, but I'll trust Your Honor's math. And your claim is that you can default with impunity, effectively erasing the remainder of your liability after the six-year limitations clock expires. That's essentially what you're arguing. What I'm arguing, Your Honor, is that the claims all approved in 2008. There's no dispute that they've approved. If we're focusing first on just the Rule 41, I understand your position. What I'm looking at is... There is a dispute about claim accrual. Okay. Well, there is no dispute that the claim accrued as of May 18th. The claim on the entire debt accrued at the acceleration option when it was exercised, but that option was withdrawn at your client's request, and the payment plan was reinstated. So that stopped whatever clock was started on the acceleration. It doesn't foreclose a suit on later default. Our position is that you cannot change the accrual date. We don't believe that there was any revocation. I'll be glad to get into the analogies in regards to the mortgage foreclosure cases, which counsel is relying on, in regards to how do you effectuate a revocation. Again, I don't like to call it an acceleration, because this is an election to demand the entirety of the withdrawal liability due. So in regards to the identity of claims issue, I just want to make one point, and then I'll move on to that. The point I'm making under Rule 41A is that the complaints under each complaint starting in 2008, the 2008 complaint unquestionably sought the entirety of the withdrawal liability outstanding. There was a notice of voluntary withdrawal pursuant to 41A, written notice. My clients had never filed an appearance in any case prior to 2018. In 2009, while maybe motivated by another missed payment, the claim reaffirmed in 2009. The election slash acceleration, whatever we want to call it, affirmed it, relied upon that acceleration, and sought again the entirety of the outstanding withdrawal liability. Each complaint, 2009, 2011, 2013, and 2015, each reasserted the acceleration, the calling due of the entire amounts. Each complaint relied on that acceleration and sought collection of the entirety of the outstanding withdrawal liability. By seeking the entire amount of the outstanding withdrawal liability on each of those occasions and filing a written notice of voluntary dismissal other than in 2011, which was a dismissal by oral motion, we have an identity of claims. It's axiomatic that any missed installments that are now being sought in 2018 are included in the amounts that were previously sought in every complaint. And the way 41A reads is that if the claim was included in a prior suit or could have been included in a prior suit, it is an adjudication on merits. The difference is we're talking about a gradually shrinking pot of money, correct? To the extent that my clients continue to pay and do their best to abide by a withdrawal liability amount due, yes. We're not talking about separate accounts or separate trust corpuses. We're talking about the same amount over time that decreases, is that correct? We are. It's one amount that was demanded back in April 18th of 2008 when the trustees decided to accelerate. So again, that's an identity of claims issue. If you want to get into the revocation, there are specific, the most developed case law on how to revoke an acceleration is all from the New York law on mortgages. And in foreclosure cases, we've got a list of... The withdrawal liability is uncollectible after April 18th of what, 2014? Correct. Because the claim approved and there's a six-year limitations period. Right. So you can default as of April 19th of 2014 and the rest of your debt is uncollectible. You've extinguished it by virtue of having won some forbearance on the part of the trustee in unwinding the acceleration and putting you back on the payment plan. How can that possibly be right? Because it's not an action by the employers. The trustees have the right and the ability under ERISA to enforce its rights. It had the choice to accelerate, only its choice. It has its own choice to file suit, to collect, to dismiss. Is there anything in the statute that says the initial acceleration is binding at the moment it occurs? Or isn't it, at least the better reading of the statutory scheme, that the trustee has the flexibility to work with the employer and withdraw the acceleration and put the employer back on a payment plan? I agree that the... Without giving up its authority to collect on future defaults. The trustee has the ability to be flexible. However, in this case, the trustee made the decision to accelerate. They made the decision to make the election under 1399. At that point, they are under notice that the claim for the entire amount of withdrawal liability has approved. And it's up to them to protect their rights. Now, in regards to the complaints and revocation, I'll point out two quick things. The argument here is an afterthought that, oh, we revoked it. Taking a look at the 2009... They revoked it in 2008 is the argument. It was revoked at the time of dismissal of the 2008 complaint. That is belied by their allegations in the 2009 complaint that says we accelerated and we're seeking all of the outstanding withdrawal liability. They did it again in 2011, 13, 15, et cetera. If there had been a revocation of the acceleration, they would not have pled the complaints the way they did. It doesn't matter if the... Is there any dispute that your clients were put back on the installment plan, which necessarily means that the debt was not accelerated? There's no dispute that my clients continued to pay. They continued to pay pursuant to the installment plan, which is inconsistent with an in-force acceleration of the debt. Again... Factually and legally. I wouldn't say it's inconsistent, Judge. What's inconsistent is the trustee's actions in regards to what their rights are. The rules are very straightforward on what the trustee is allowed to do and not allowed to do. But if your clients were put back on the payment plan and permitted to continue to pay as you go rather than pay the entire debt at once, then that necessarily implies the withdrawal of the acceleration by agreement, such that it was no longer effective, regardless of what the later complaints... I know that I have a red light in front of me, but I'm going to point out one thing, Judge. There's a five-prong test in all the law in regards to how a revocation would be acted. One, it has to be evidenced by an affirmative act, and it is recognized that dismissal of a lawsuit is not an affirmative act. The affirmative act must be clear and unequivocal. I just ask whether you dispute that your clients were put back on the payment plan. My clients continue to make payments pursuant to the old payment plan. But are they going to quit? I'm sorry, I didn't mean to interrupt. Go ahead. You're just going to tell your clients to quit paying? If it was our intent to trick... Well, that's what it looks like. If that was the case, there wouldn't have been any payment after 2014. In the 2018 complaint, this is the first complaint where they realized that if they pled it the same way they had pled in the past, on its face it would be barred by the statute of limitations. That's why they changed it, the trustee changed its view, and in 2018, for the first time, only sought the missing installment payments. Every prior complaint had sought the entirety of the withdrawal liability, every complaint, which is why there's an identity of claims for that purpose. The last thing, Judge, in regards to the affirmative act that is necessary for a revocation, receipt of continued payments is not sufficient for a revocation. The affirmative act must be clear and equivocal and must put the borrower in that instance on notice that the installment plan is placed. There's no implication, there's no implied, there are strict requirements as to how a revocation can take place. It did not. And the assertions in the five subsequent complaints after 2008 that failed to mention any revocation, but again seek the entirety of the withdrawal liability, make it clear that this is an afterthought to save their claims that the trustees failed to assert before the end of the statute of limitations. This complaint was dismissed on the pleadings. This is a 12B6 dismissal. Do we need factual development on whether your clients were affirmatively restored to the installment plan? No, Judge, because a statute of limitations is appropriate on a 12B6 motion based on facts in the complaint. I understand, but if we don't buy that, is there a factual dispute about whether your clients were restored to the installment plan, or is that conceded? No, I'm not saying there's a factual dispute, Judge. What I'm saying is my clients did continue to pay installments in hopes to not be sued. That did occur. I am not agreeing that the acceleration was provoked, which I think is a different question than whether or not they were back on the installment plan. Do we need fact-finding on that question? I don't believe so, Judge, because as we mentioned in the briefs, under help at home, under notice pleading, you're allowed to supplement your facts as long as they're consistent with the complaint in response to a motion to dismiss, and that's what happened here. And if you look at those materials which the plaintiff was allowed to submit in response to the motion to dismiss, they do not change the application of the rule, they do not change the application in regards to enforcement of the statute of limitations, and they do not change the application of Rule 41A1. I understand that you believe there may be an issue in regards to the identity of claims separating out the installments, but it needs to be understood that only 2018 separated out the installments in regards to what the complaint was seeking, and there's no question that those installments would be included in the entirety of the withdrawal liability, which was the subject of five prior actions, all of which were voluntarily dismissed. All right, thank you. Thank you. Mr. Shannon, your time was close to expiring, but we kept your opponent at the podium for a long time, so I'll give you an extra minute to sum up if you have anything else to say. Judge, I don't need a minute. All I would say is that we have alleged that there was a revocation of acceleration, and I think we're entitled to prove that. With respect to Your Honor's question as to the amount of outstanding debt, I believe that attached to our response to the motion to dismiss filed in the district court, there is an entire schedule showing all of the payments that have been made and when they were made. That's all I have, and I just wish the court a happy birthday. Thank you. And we will take the case under advisement with thanks to all counsel. Thank you.